## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JENNIFER COCHRAN, | ) | CIVIL ACTION - LAW |
| | ) | |
| Plaintiff, | ) | NO. 2:21-cv-360 |
| | ) | |
| v. | ) | |
| | ) | |
| RESOURCES FOR HUMAN | ) | |
| DEVELOPMENT | ) | |
| | ) | |
| Defendant. | ) | JURY TRIAL DEMANDED |

## COMPLAINT

AND NOW, comes the Plaintiff, Jennifer Cochran, by and through his counsel, Susan N. Williams, Esquire, and Williams Law Offices, and files the within Complaint, in support thereof alleging as follows:

## INTRODUCTION

1.      This action is brought pursuant to the Americans with Disabilities Act, as amended [42 U.S.C.S. Section 12101 et seq.] ("ADAAA"), Title VII of the Civil Rights Act of 1964 as amended, and the Pennsylvania Human Relations Act [43 P.S. § 955 et seq.] ("PHRA"). In violation of both the ADAAA and the PHRA, Plaintiff alleges that he was subjected to a hostile work environment on account of her gender, and was refused a reasonable accommodation and was terminated from his position as a result of discrimination due to her disability and as a result of retaliation due to her request for a reasonable accommodation.

## JURISDICTION AND VENUE

2.      This Court is permitted to maintain personal jurisdiction over the Defendant because its contacts with the Commonwealth and this judicial district are sufficient to meet the minimum requirements necessary to satisfy the notions of fair play and justice established by the

1

United States Supreme Court in *International Shoe Company v. Washington*, 326 U.S. 310 (1945) and its progeny.

3.     The United States District Court for the Western District of Pennsylvania has federal question jurisdiction over this case because alleged violations of the ADAAA arise under the laws of the United States.  28 U.S.C. § 1331. This Court has supplemental jurisdiction over the alleged violations arising under Pennsylvania law.  28 U.S.C. § 1367.

4.     Venue lies in this district pursuant to 28 U.S.C. § 1391(b)(1), (2) as the Defendant resides within the district and a substantial part of the events and occurrences described herein took within the district.

**PARTIES**

5.     Plaintiff, Jennifer Cochran, ("Mrs. Cochran") is an adult individual currently residing at 136 Morewood Avenue, Apartment A, Blairsville, Indiana County Pennsylvania 15717-1461 .

6.     Defendant, Resources for Human Development, Inc., is a business operating in the Commonwealth of Pennsylvania with a business address of 4700 Wissahickon Ave., Suite 126, Philadelphia PA 19144-4248.

**FACTUAL BACKGROUND**

7.     The averments of Paragraphs 1 through 6 are incorporated by reference, as if more fully set forth herein.

8.     Ms. Cochran was employed by Resources for Human Development as a Certified Peer Specialist.

9.      A Certified Peer Specialist is an individual that has acknowledged they have a serious mental illness and have taken the proper classes to become certified by the state to provide peer services.

10.     RHD Impact is a community treatment team in Westmoreland County which serves a clientele of individuals with severe and persistent mental illness.

11.     Ms. Cochran has a diagnosis of Bipolar I, PTSD and general anxiety disorder. The Defendant/Employer was aware of this diagnosis.  She has been receiving mental health treatment for over thirty years.

12.     On January 4, 2019, Mrs. Cochran had a final interview for her position.

13.     During the interview, Micheal Van Der Zee, asked Mrs. Cochran how her supervisor, John Eliyas, would know if she was having a difficult time because of her disability or needed assistance with something.

14.     She replied that she had strong communication skills and would just tell John.

15.     From January 2019 and ongoing until the first consumer arrived in April, Mrs. Cochran asked on numerous occasions what the procedure was for a particular situation.

16.     Each time she was told by John Eliyas that they would figure it out and, in the presence for a new program.

17.     During this period of time also, John Eliyas and his assistant Matt Yhesko talked negatively about consumers they had in the past.

18.     These individuals were constantly dismissive of questions that Mrs. Cochran had concerning what they would be doing and what her responsibilities would be as a certified peer specialists.

19.     In June 19 Mrs. Cochran expressed concerns during a regularly scheduled morning meeting of inappropriate sexual behavior from a consumer.

20.     She advised that given his history of violence she did not feel comfortable meeting with him alone.

21.     Following the meeting John Eliyas and Matt made the comment that if she did not wear red lipstick maybe he would not act that way, implying that Mrs. Cochran's behavior somehow provoke the consumer.

22.     On June 18, 2019, Mrs. Cochran again expressed concern about meeting with the consumer.

23.     Once again a comment was made by John Eliyas and Matt about her wearing red lipstick.

24.     On July 16, 2019 Mrs. Cochran was dispatched to pick up this same consumer after he was discharged from the program in Newcastle, due to aggression at a homeless shelter where he resided.

25.     She transported him to the Knights Inn Greensburg.

26.     She expressed to John Eliyas and Matt that she did not feel comfortable transporting him that distance alone in her vehicle while he was agitated from the incident at the shelter.

27.     On July 28, 2019, Mrs. Cochran was dispatched by John Eliyas to a crisis intervention with another consumer.

28.     Mrs. Cochran called John Eliyas requesting more information.

29.     Mr. Eliyas stated that the consumer was very delusional, just stop and talk to him for a few minutes.

30.     Two days later particular individual was committed to touring state hospital after threatening to kill various people to satisfy the vampire in him.

31.     This consumer was in possession of a knife.

32.     There was no standard operating procedure in regard to responding to a crisis intervention.

33.     In early summer of 2019, she responded to a crisis call with a consumer who informed her that the only reason he did not rape and kill her was because she had an Army hat on.

34.     In August of 2019 an incident occurred with the consumer whose boyfriend assaulted her neighbor, resulting in his arrest by the Pennsylvania state police and the issuance of a protection from abuse order.

35.     Ms. Cochran was instructed by John Eliyas to take the consumer for the protection from abuse order and accompany her to her residence.

36.     The consumer's residence was splattered with blood from the assault.

37.     Mrs. Cochran was never debriefed or given the opportunity to process this encounter.

38.     The defendant had had no standard operating procedure concerning debriefing employees after exposure to extreme acts of violence.

39.     In August 2019 a consumer agreed to a 201 commitment from defendant's office in Greensburg.

40.     She was transported to the hospital without incident.

41.     Later in the evening the consumer's paramour entered the office in an aggressive state.

42.     Mrs. Cochran responded by firmly walking out of the area providing a buffer for other employees.

43.     The consumer' paramour left the office only after threatening to contact the police.

44.     Nothing was done by agents or employees of the defendant about this.

45.     There was no incident report or follow-up that would have prevented this from happening again.

46.     Days later the sign was posted which read "employees only past this point."

47.     Within a week Mrs. Cochran accompanied the same consumer to Westmoreland Hospital for a 201 commitment.

48.     This was not the job responsibility of a certified peer specialist.

49.     Once again the consumer's paramour entered the office later in the day in an agitated state.

50.     Mrs. Scott Cochran contacted 911.

51.     The consumer's paramour left the property before the state police were dispatched

52.     On September 5, 2019, Mrs. Cochran accompanied a consumer to Excela in Westmoreland for a 201 commitment

53.     This was a trigger for Mrs. Cochran and she expressed to John Eliyas the difficulty for her of being involved in such activity

54.     Nothing was done.

55.     On September on September 8, 2019, Mrs. Cochran once again accompanied the same consumer for a 201 commitment

56.     She again told Mr. Eliyas that this was trigger. for her.

57.    Again, nothing was done.

58.    This consumer stated that he was having a nightmare related to the sexual assault of his sister and he was having a physical response of erection/ejaculation.

59.    Mrs. Cochran called her therapist to process

60.    In October 2019, Mrs. Cochran decompensated psychologically primarily due to the continuing stress source at RHD which were not being appropriately addressed: e.g., there were no safety plans, or on, multiple requests not to be assigned to work with particular clients were being ignored, and she was being given clinical responsibilities beyond those required of a certified peer specialist.

61.    October 17, 2019, she was admitted to Indiana Regional Hospital after a suicide attempt by overdose. The IME doctor, Louis S. Martone opined that …"the stress related to dealing with the ACT Team treatment population exacerbated her symptoms of depression and posttraumatic stress disorder. "

62.    On October 28, 2019, Mrs. Cochran's clinical psychologist wrote a letter to Mr. Eliyas recommending that Ms. Cochran be granted a temporary leave of absence due to her increased risk of relapse because of the agency's failures to deal with specific conditions related to her work

63.    Mr. Eliyas did not respond to this request.

64.    Ms. Cochran was terminated from her employment November27, 2019.

## COUNT 1
## ADAAA-DISCRIMINATION

65.    The averments of Paragraphs 7 through 64 are incorporated by reference, as if more fully set forth herein.

66.     Mr. Cochran has suffered discrimination in violation of the Americans with Disabilities Act, as amended.

67.     Specifically, Mr. Cochran is a qualified individual with a disability which significantly impairs a number of her life functions when active.

WHEREFORE, Plaintiff requests relief as is appropriate under 42 U.S.C. § 12117, including, but not limited to back pay, front pay, compensatory damages, punitive damages, pre- and post-judgment interest, reasonable attorney's fees and costs.

**COUNT 2**
**ADAAA-RETALIATION**

68.     The averments of Paragraphs 7 through 77 are incorporated by reference, as if more fully set forth herein.

69.     Mrs. Cochran has suffered retaliation in violation of the Americans with Disabilities Act, as amended.

70.     Specifically, she is a qualified individual with a disability which significantly impairs a number of her life functions.

71.     She had requested the reasonable accommodation of not being assigned to certain consumers.

72.     In response to this request, Mrs. Cochran began to be assigned one on one to these individuals, subjected to repeated comments from co-workers, suspensions and other form of discipline.

73.     These actions were sufficiently severe and pervasive to constitute a hostile work environment.

WHEREFORE, Plaintiff requests relief as is appropriate including, but not limited to back pay, front pay, compensatory damages, punitive damages, pre- and post-judgment interest, reasonable attorney's fees, and costs.

## COUNT 3 –

## TITLE VII – HOSTILE WORK ENVIRONMENT HARASSMENT

5.      The averments of Paragraphs 7 through 73 are incorporated by reference as if set forth more fully herein.

6.      Ms. Cochran was subjected to repeated acts of sexual harassment from Defendant Lucchetti.

7.      The harassment was severe and pervasive, as it occurred on a regular basis throughout Ms. Cochran's employment and would have led any reasonable person in her position to suffer from significant emotional distress.

8.      Ms. Cochran was subjected to repeated derogatory and offensive racial comments by Defendant Lucchetti.

9.      Defendant Lucchetti acted in a supervisory capacity over Ms. Cochran and thus could bind Defendant Colonial Toyota by his actions.

10.     Such conduct was sufficiently severe and pervasive to alter the conditions of Ms. Cochran's employment.

11.     This harassment and the failure to rectify the harassment constitutes reckless disregard for Ms. Cochran's federally protected rights.

12.     Ms. Cochran suffered from significant emotional distress as a result of this hostile work environment.

WHEREFORE, Ms. Cochran is entitled to affirmative relief as is appropriate under 42 U.S.C. § 2000e-5(g), including but not limited to back pay, front pay, pre- and post-judgment interest, compensatory damages, punitive damages, reasonable attorney's fees and costs.

## COUNT 5

## PHRA – DISCRIMINATION & RETALIATION

75.     The averments of Paragraphs 7 through 73 are incorporated by reference, as more fully set forth herein.

13.     Claims raised under the PHRA are interpreted in line with claims raised under the ADAAA.  *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996).

14.     Accordingly, Mr. Cochran's s discrimination and retaliation claims raised under the ADAAA are alleged similarly under the PHRA.

WHEREFORE, Plaintiff is entitled to affirmative relief including, but not limited to back pay, front pay, pre- and post-judgment interest, compensatory damages, punitive damages, reasonable attorney's fees and costs.

Respectfully Submitted,

*s/Susan N. Williams, Esq.*
Susan N. Williams, Esquire
 Pa ID No. 40077

101 North Main St., Suite 102-B
Greensburg PA 15601
(724) 331-7678
(724) 838-8115 (fax)